IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS,<br>*Plaintiff*,<br><br>v.<br><br>THE UNITED STATES COAST GUARD,<br><br>ADMIRAL KEVIN LUNDAY, in his official capacity as Acting Commandant of the U.S. Coast Guard, and<br><br>REAR ADMIRAL RUSSELL DASH, in his official capacity as Commander, U.S. Coast Guard Personnel Service Center,<br>*Defendants*. | No. |

**VERIFIED COMPLAINT**

1. The Constitution's equal-protection principle bars the United States Coast Guard from discriminating based on race or ethnicity. Yet under the Coast Guard's College Student Pre-Commissioning Initiative, the Coast Guard bans most students from applying unless they attend a federally-designated "Minority Serving Institution" or a school selected by the Coast Guard that must be less than fifty percent white. Federally-designated MSIs are defined solely in terms of their racial or ethnic composition. This means that qualified students who aspire to serve in the Coast Guard but attend schools that do not have the "right" mix of races or ethnicities are ineligible for CSPI scholarships and are blocked from this pathway to an officer's commission.

2. CSPI seeks students who demonstrate "academic and leadership excellence and a desire to serve in the Coast Guard." College students across the country meet these criteria, and many of them might not serve but for the benefits provided by the CSPI scholarship. Because CSPI is limited to students at MSIs or selected majority-minority institutions, however, otherwise-qualified students from non-MSI schools—including SFFA's members—are denied the scholarship and the

automatic acceptance to Officer Candidate School that comes with it.

3. Member A, for instance, is an ideal CSPI candidate. His GPA exceeds the academic performance threshold, his moral character is exemplary, and he wants to serve as an officer in the Coast Guard. Yet he is ineligible to compete for the scholarship because the university he attends is not a federally-designated MSI and it cannot be selected because more than fifty percent of the student body is white. If Member A attended the MSI located only minutes away from the non-MSI school he currently attends, he would be eligible for a CSPI scholarship and the accompanying pathway to commissioning as a Coast Guard officer. But because his school lacks the "right" racial make-up, he is not.

4. There is no valid reason to make federal scholarships or military service turn on race or ethnicity. "Eliminating racial discrimination means eliminating all of it." *SFFA v. Harvard*, 600 U.S. 181, 206 (2023). The opportunity to compete for a scholarship and a coveted position as a Coast Guard officer should be available to all qualified students regardless of immutable traits, and the denial of that opportunity based on arbitrary racial metrics harms students of all races—including minority students at non-MSI schools who are deemed ineligible because too few of their classmates share their race or ethnicity. This Court should declare CSPI's discriminatory requirements unconstitutional, so that all students can access the Coast Guard's college-to-commissioning pipeline regardless of the racial makeup of their alma maters.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction because this case arises under the Constitution of the United States. *See* 28 U.S.C. §1331.

6. An actual controversy exists between the parties under 28 U.S.C. §2201(a).

7. Venue is proper under 28 U.S.C. §1391(b)(2) because Member A's recruiter is located in the Panama City Division of the Northern District of Florida. *See* Coast Guard Recruiting Manual,

COMDTINST M1100.2I, 7-29 (June 2025) (to be eligible for CSPI, students must attend a school within 100 miles of a Coast Guard unit or recruiting office).

8. The Coast Guard cannot invoke sovereign immunity. The APA's waiver of sovereign immunity extends to constitutional claims. *See Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 673 (6th Cir. 2013); *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 775 (7th Cir. 2011) ("[T]he waiver in §702 is not limited to claims brought pursuant to the review provisions contained in the APA itself." (collecting cases)).

**PARTIES**

9. Plaintiff Students for Fair Admissions is a voluntary nonprofit membership organization formed for the purpose of defending human rights and civil liberties, including the right of individuals to equal protection under the law, through litigation and other lawful means. SFFA's members include tens of thousands of individuals across the country who believe that racial and ethnic preferences in the military and national security arena are unfair, unnecessary, and unconstitutional. SFFA has at least one well-qualified member who wishes to become a Coast Guard officer through CSPI and is otherwise qualified for CSPI but is ineligible for consideration because he does not attend an MSI or a selected majority-minority college.

10. Defendant United States Coast Guard is a military service within the United States Department of Homeland Security. 14 U.S.C. §§101, 103. The Coast Guard is responsible for administering CSPI. *Id.* §2131.

11. Defendant Admiral Kevin Lunday is the Acting Commandant of the U.S. Coast Guard. He is responsible for all Coast Guard policies and operations, including the recruitment and personnel programs, including CSPI. Admiral Lunday is sued in his official capacity.

12. Defendant Captain Anthony R. Jones is Commander of the U.S. Coast Guard Personnel Service Center. Captain Jones directs the Coast Guard's recruitment and personnel programs, including CSPI. Captain Jones is sued in his official capacity.

## BACKGROUND

**I.        Commissioning as an Officer in the Coast Guard.**

13.    The Coast Guard draws its officer corps from its enlisted ranks and from the general population. There are four main paths to becoming a Coast Guard officer: graduating from the Coast Guard Academy; obtaining a direct commission to perform a specialty occupation like serving as an attorney in the judge advocate corps; successfully applying to Officer Candidate School after graduation from a civilian college or university; and receiving a CSPI scholarship during college and getting the automatic OCS slot that comes with it.

14.    *The Coast Guard Academy.* Aspiring Coast Guard officers may apply for admission to the Coast Guard Academy. In addition to academic and fitness qualifications, applicants must be between 17 and 22 years old on the last Monday in June of their year of matriculation. *Admission Requirements*, United States Coast Guard Academy, perma.cc/Z2W8-VVS8. Admission to the Academy is "highly selective," and the Academy "admits about 300 cadets from thousands of applicants" each year. *Id.* Cadets do not pay for tuition or room and board and receive a stipend while attending the Academy. *Cost and Tuition*, United States Coast Guard Academy, perma.cc/4N8J-KY64. Upon graduation, cadets are commissioned as ensigns in the Coast Guard. *Id.*

15.    *Direct Commissioning.* Civilian professionals and Coast Guardsmen with specialized skills or experience can join the Coast Guard as an officer without attending Officer Candidate School. *Direct Commission Officer Programs*, United States Coast Guard, bit.ly/4nVr8yD. For example, to directly commission as an aviation officer, an applicant must have at least 500 hours of military flight time across two years of active duty. *Eligibility Requirements, Officer: Direct Commission Aviator (DCA)*, United States Coast Guard, bit.ly/4mEx79O. To directly commission as an engineer, an applicant must have a bachelor's degree in naval, civil, or electrical engineering. *Eligibility Requirements, Officer: Direct Commission Engineer (DCE)*, United States Coast Guard, bit.ly/3VCLQHs. To directly commission into the Coast Guard JAG corps, applicants must have a law degree or be in their second or third year of law

4

school. *Eligibility Requirements, Officer: Direct Commission Lawyer (DCL)*, United States Coast Guard, bit.ly/3VGxwOg.

16. ***Officer Candidate School.*** Civilians, prior service members, and enlisted Coast Guardsmen can earn a commission as an officer by successfully completing Officer Candidate School, which is "an intensive 12-week course of instruction in leadership and military subjects" offered twice a year in New London, Connecticut. *Officer Candidate School*, United States Coast Guard, bit.ly/3HjHEsI. The application process for OCS is "one of the most competitive of any Coast Guard officer program." *Id.* At a minimum, applicants must have a bachelor's degree or four years of Coast Guard service. *Eligibility Requirements*, United States Coast Guard, bit.ly/45ZxPJF. In recent years, OCS acceptance rates have been as low as 15%. *See* S. Wilson, *Your Career as a Commissioned Officer in the US Armed Forces Starts in Officer Candidate School*, Military Supportive Colleges (June 16, 2022), perma.cc/3P6T-K7RK.

17. ***College Student Pre-Commissioning Initiative.*** CSPI is the only fully funded Coast Guard officer training program targeted at college students. Although the Coast Guard Auxiliary University Program provides limited training and internship opportunities to college students on an open-enrollment basis, participants are unpaid and "do not [receive] a military commission" or automatic acceptance to OCS. *Join the AUP*, United States Coast Guard Auxiliary, bit.ly/4oXUzBu.

18. By contrast, CSPI scholarship recipients become "active-duty Coast Guard member[s] with the rank of Officer Trainee" and receive active-duty salaries *during* college. *College Student Pre-Commissioning Initiative (CSPI) Scholarship Program*, United States Coast Guard, bit.ly/44KjxuD. They also receive healthcare coverage, full payment of school tuition, and book stipends. *Id.* Most importantly, CSPI recipients are guaranteed acceptance to OCS after completing the program and graduating from their respective schools. *See* 14 U.S.C. §2131(e) ("Each graduate of the Program shall

attend the first enrollment of Officer Candidate School that commences after the date of such graduate's graduation.").

19. Unlike the Army, Navy, Air Force, and Marines, the Coast Guard does not commission officers through Reserve Officers' Training Corps programs at colleges and universities. *Cf.* T. South, *Army ROTC Must Find More Officers than it has in years, and here's how it's happening*, Army Times (Oct. 16, 2019), perma.cc/3WC7-262A (65% of U.S. Army officers are commissioned through ROTC). In practice, however, CSPI is virtually indistinguishable from the ROTC programs run by the other services. Like ROTC cadets and midshipmen, CSPI enrollees receive scholarships covering "full payment of school tuition, fees, [and] textbooks." *Academic Resource Catalog* 9, U.S. Dep't of Homeland Sec., perma.cc/VZ9P-WW5H. Like ROTC cadets and midshipmen, they are required to attend training in "leadership, management, law enforcement, navigation, and marine science skills" while in school. *Id.* And like some of their ROTC peers, CSPI enrollees must pass officer candidate school in addition to their other program requirements before receiving a commission. *Cf. Marine Option*, Iowa State University Naval ROTC, perma.cc/6NZL-FM4L.

20. Unlike the other services' ROTC programs, CSPI is not an option for most college students because eligibility is governed by arbitrary racial classifications.

II. **CSPI discriminates based on race and ethnicity.**

21. CSPI was created in 1989 as part of an initiative to increase cooperation between HBCUs and federally sponsored programs. *See Continued Partnership with U.S. Coast Guard Gives Students Scholarships, Careers*, Cal. State East Bay (June 28, 2022), perma.cc/28S3-68S9. In 2009, the Coast Guard expanded CSPI to include all federally-designated MSIs. *See A Continuing Examination of Civil Rights Services and Diversity in the Coast Guard: Hearing Before the Subcomm. on Coast Guard & Maritime Transp. of the H. Comm. on Transp. & Infrastructure*, 111th Cong. (June 19, 2009) (statement of Vice Admiral Clifford I. Pearson). Congress codified that policy decision in the National Defense Authorization Act

6

of 2021. *See* 14 U.S.C. §2131(b)(6)(A). Under the current program, an applicant must attend an HBCU, a "federally designated Minority Serving Institution," or a selected institution that is majority non-white to be eligible for CSPI. *College Student Pre-Commissioning Initiative (CSPI) Scholarship Program*, United States Coast Guard, bit.ly/44KjxuD; Coast Guard Recruiting Manual, COMDTINST M1100.2I, 7-29.

22. Though all colleges and universities serve minority students, only some count as MSIs. CSPI recognizes seven distinct types of MSIs: HBCUs, "Hispanic-serving institution[s]," "Tribal College[s] or Universit[ies]," "Alaska Native-serving" or "Native Hawaiian-serving institution[s]," "Predominantly Black Institution[s]," "Asian American and Native American Pacific Islander-serving institution[s]," and "Native American-serving nontribal institution[s]." 20 U.S.C. §1067q(a); 14 U.S.C. §2131(6)(A).

23. To qualify as a "Hispanic-serving institution," a school must enroll "at least 25 percent Hispanic students." 20 U.S.C. §1101a(a)(5); *accord* 34 C.F.R. §606.2(a)(1) ("25 percent Hispanic students"). Likewise, to qualify as a "Predominantly Black Institution," a school must enroll "at least 40 percent Black American students." 20 U.S.C. §1067q(c)(9)(C)(i). These are "undeniably [classifications] based on race and ethnic background." *Regents of Univ. of Calif. v. Bakke*, 438 U.S. 265, 289 (1978) (opinion of Powell, J.); *see SFFA*, 600 U.S. at 209 (requiring strict scrutiny for "[r]acial and ethnic distinctions of any sort").

24. Recasting CSPI as a separate commissioning track reserved for MSIs and other institutions with a suitably low number of white students thus infects it with pernicious racial classifications. There is no minimum racial threshold that schools must clear to be classified as an HBCU or to retain that classification. By contrast, all the additional MSI categories recognized by CSPI (except for "Tribal College or University") are defined in relation to racial quotas. *See* §20 U.S.C. §1067q(a); 14 U.S.C. §2131(6)(A). If a school's student body drops below the required racial mix for a particular category of MSI, it loses its MSI classification.

7

25. These racial and ethnic quotas have nothing to do with the histories of the institutions involved, like whether they have historically served (or discriminated against) those racial or ethnic groups. Indeed, the absence of any historical remedial purpose is made clear by CSPI's inclusion of a catch-all criterion for eligibility: if a school's enrollment does not meet the individual threshold for any racial demographic to qualify as an MSI, the Coast Guard can designate the school as eligible for CSPI if its total enrollment is "at least 50 percent Black American, Hispanic, Asian American . . . , Native American Pacific Islander . . . , or Native American." 14 U.S.C. §2131(b)(6)(A)(ii).

26. The quotas are also arbitrary: If a college enrolls only 39 percent black students or 24 percent Hispanic students, then it is not an MSI and *all* its students, including minority students, are ineligible for the CSPI scholarship—unless, that is, the school enrolls enough minorities of other races to exceed the fifty percent-minority mark. *Cf. SFFA*, 600 U.S. at 220 (rejecting the use of "race for race's sake").

27. CSPI does not merely distinguish among races and ethnicities—it treats some as a negative. Many students, including SFFA's Member A, are categorically barred from the program because too many of their fellow students have the same skin color.

28. The program also relies on stereotypes. The Coast Guard opens CSPI to students who attend so-called Hispanic-serving institutions. But ethnic "categories, such as 'Hispanic'" have no inherent definition, instead reflecting "'evolving cultural norms'" rather than the quality of any applicant. *SFFA*, 600 U.S. at 216.

### III. CSPI harms members of Students for Fair Admissions.

29. SFFA has at least one member who is able and ready to apply for CSPI, except they do not attend a college or university with the "right" mix of races or ethnicities.

30. Member A, for example, is a sophomore at a university within 100 miles of a Coast Guard unit or recruiting office. He is a U.S. citizen within CSPI's age limits. His GPA exceeds the

8

program's academic performance threshold, he has no disqualifying dependents or prior service, and he is able bodied and has "outstanding moral character." 14 U.S.C. §2131(b).

31. Member A wants to commission as an officer in the Coast Guard through the CSPI scholarship program and wishes to apply for a CSPI scholarship for his final two years of college. The Coast Guard is accepting CSPI applications for the 2026-27 academic year until November 3, 2025. *See Py26 Coast Guard Recruiting Command Officer Accession Programs, Procedures, And Selection Panel Schedule*, United States Coast Guard Recruiting Command (Apr. 25, 2025). But when Member A approached his local recruiter about submitting a CSPI application, his recruiter told him that he was ineligible because he does not attend an MSI. If Member A attended the MSI located minutes down the road from his current school, he would be eligible.

32. Member A is able and ready to apply to CSPI, immediately after a court orders the Coast Guard to open the program to students regardless of their school's racial or ethnic makeup. If a court grants that relief, he would apply to participate as a junior and, if necessary, again to participate as a senior. He continues to satisfy all the other criteria.

33. As it currently exists, CSPI harms students like Member A by rendering them ineligible for life-changing scholarships, specialized OCS training, and guaranteed OCS slots provided to CSPI participants solely due to the racial makeup of the schools they attend. In other words, a student's ability to serve can turn on CSPI eligibility.

## CLAIM FOR RELIEF

34. Plaintiff repeats and realleges the allegations above.

35. The Fifth Amendment's Due Process Clause includes an equal-protection principle that binds the federal government. That principle is no less strict than the Fourteenth Amendment's Equal Protection Clause that binds the States. *See Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 224

(1995). Under our Constitution, "any person, of whatever race, has the right to demand that any governmental actor … justify any racial classification subjecting that person to unequal treatment under the strictest judicial scrutiny." *Id.* As "a military service and a branch of the armed forces," 14 U.S.C. §101, the Coast Guard is subject to the Fifth Amendment, *see, e.g.*, *Doe 1 v. Trump*, 275 F. Supp. 3d 167, 211-12 (D.D.C. 2017), *vacated on other grounds by Doe 2 v. Shanahan*, 755 Fed. App'x 19 (D.C. Cir. 2019); *see also Crawford v. Cushman*, 531 F.2d 1114, 1120 (2d Cir. 1976) ("A succession of cases in this circuit and others ha[s] reiterated the proposition that the military is subject to the Bill of Rights and its constitutional implications.").

36. CSPI, as currently set up and operated, facially discriminates based on race and ethnicity. The program fails strict scrutiny because it does not employ measures that are "narrowly tailored" to "further compelling governmental interests." *SFFA*, 600 U.S. at 206-07.

37. There are "only two compelling interests that permit resort to race-based government action"—"remediating specific, identified instances of past discrimination that violated the Constitution or a statute" and "avoiding imminent and serious risks to human safety in prisons." *Id.* at 207.

38. The interests identified by the Coast Guard fit neither category. CSPI was conceived to further several "strategic goals" including "increased diversity through leadership accountability; improve[d] total workforce cultural climate; . . . [and] optimize[d] education to understand the value of a diverse workforce." *A Continuing Examination of Civil Rights Services and Diversity in the Coast Guard: Hearing Before the Subcomm. on Coast Guard & Maritime Transp. of the H. Comm. on Transp. & Infrastructure*, 111th Cong. (2009) (statement of Vice Admiral Clifford I. Pearson).

39. The Supreme Court has already rejected these interests as insufficient under strict scrutiny. *See SFFA*, 600 U.S. at 214 (rejecting Harvard's and UNC's claims to have compelling interests in "training future leaders"; "preparing graduates to 'adapt to an increasingly pluralistic society'"; "better educating [their] students through diversity"; and "producing new knowledge stemming from diverse

10

outlooks").

40. Like Harvard's and UNC's interests, the Coast Guard's interests cannot "be subjected to meaningful judicial review." *Id.* There is no way for "courts … to measure these goals," and even if they could be measured, courts have no basis for assessing "when they have been reached." *Id.*; *see also id.* ("How is a court to know whether leaders have been adequately 'trained'; whether the exchange of ideas is 'robust'; or whether 'new knowledge' is being developed?" (cleaned up)).

41. Any appeal the Coast Guard might make to purported operational benefits of diversity would be as vague and "elusive" as Harvard and UNC's appeal to the "educational benefits of diversity." Indeed, the only relevant, quantifiable aspects of the Coast Guard's race-based scholarship program are the racial and ethnic enrollment percentages that define CSPI-eligible MSIs.

42. CSPI also fails strict scrutiny because it "fail[s] to articulate a meaningful connection between the means [it] employ[s] and the goals [it] pursue[s]." *Id.* at 215. CSPI eligibility turns on whether a student attends an MSI, and MSIs, in turn, are defined by arbitrary racial or ethnic enrollment percentages.

43. For example, one type of MSI is the Hispanic-serving Institution. This designation, which comes with federal benefits such as CSPI eligibility, purportedly serves "Hispanic Americans [who] are at high risk of not enrolling or graduating from institutions of higher education." 20 U.S.C. §1101(a)(1). The program's 25% ethnic quota bears no relation to that statement. Lower enrollment and graduation rates likely concern factors other than ethnicity and thus could be solved by neutral programs that serve "low-income individuals." §§1101(b)(2), 1102. And the program *hurts* the thousands of Hispanic students who enroll or aim to graduate from institutions that do not satisfy the program's arbitrary quota.

44. The Coast Guard does not need to discriminate to achieve its stated interests. Else-

where, the Coast Guard has been successful in using race-neutral measures to increase minority enlistment. Until 2010, the Coast Guard Academy was prohibited by federal statute from using racial preferences in its admissions process. In the two years before it began considering race, the Academy launched an aggressive advertising and recruiting campaign targeting minorities. At the end of those two years, the Academy had increased minority enrollment by 60%—from 15% to 24%. Those numbers were within a few percentage points of the other academies, which had been using explicit racial preferences for years.

45. CSPI's use of race and ethnicity also "lack[s] a 'logical end point.'" *SFFA*, 600 U.S. at 221 (cleaned up). As written, the discriminatory aspects of the program are set in stone even if the findings that motivated them no longer obtain.

46. As a result of the program's unconstitutionally discriminatory criteria, otherwise qualified applicants—including minority students at schools with the "wrong" mix of races and ethnicities—are ineligible for the financial benefits, training, and mentorship provided only through CSPI.

47. That the Coast Guard is a military service and a component of the Department of Homeland Security does not diminish the constitutional violations described above. *See Owens v. Brown*, 455 F. Supp. 291, 300 (D.D.C. 1978) (courts are not compelled "to abdicate their responsibility to decide cases and controversies merely because they arise in the military context"). Although courts are mindful of the considerations unique to the military and national security contexts, no level of deference justifies racial discrimination. *See SFFA*, 600 U.S. at 217 ("[A]ny deference must exist 'within constitutionally prescribed limits.'").

48. Blind deference to assertions of national security or military necessity can lead to "gravely wrong" outcomes. *Id.* at 207 n.3 (citing *Korematsu v. United States*, 323 U.S. 214, 216 (1944)). "'Any retreat from the most searching judicial inquiry can only increase the risk of another such error occurring in the future.'" *Id.* (quoting *Adarand*, 515 U.S. at 236).

49. Because CSPI's race- and ethnicity-based requirements violate the Fifth Amendment, they should be declared unlawful and enjoined.

## PRAYER FOR RELIEF

Plaintiff asks the Court to enter judgment in its favor and to grant the following relief:

a. A declaratory judgment that CSPI's race- and ethnicity-based requirements are unconstitutional;

b. A preliminary and permanent injunction prohibiting the Secretary from enforcing or applying CSPI's race- and ethnicity-based requirements when making decisions whether to award or maintain scholarships;

c. All other relief that Plaintiff is entitled to, including attorneys' fees and costs.

Respectfully submitted,

Dated: October 7, 2025

/s/ Zachary P. Grouev

Thomas R. McCarthy* (VA Bar No. 47154)
Cameron T. Norris* (TN Bar No. 33467)
James F. Hasson* (VA Bar No. 97778)
Zachary P. Grouev (FL Bar No. 1038629)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22201
(703) 243-9423
cam@consovoymccarthy.com

*Counsel for Plaintiff SFFA*

*\* pro hac vice application forthcoming*

## VERIFICATION

I, Edward Blum, declare as follows:

1. I am the President of Students for Fair Admissions, the plaintiff in this case.

2. I have reviewed this complaint.

3. For the allegations within my personal knowledge, I believe them all to be true.

4. For the allegations not within my personal knowledge, I believe them all to be true based on my review of the cited policies and documents and based on SFFA's conversations with its members, including Member A.

5. I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 7, 2025

_____
Edward Blum
President of Students for Fair Admissions